ALAN LEBENBAUM, ESQ.
al2774
156 Beach 139th Street
Belle Harbor, New York 11694
Tele: (917) 826-1371
        and
ARNOLD SAPHIRSTEIN ESQ.
as8157
155 Bellmore Road
East Meadow New York 11554
Tele: (516) 731-6011

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

OCT 2 1 2005 ★

BROOKLYN OFFICE

**CV  05  4911**

DEARIE, J.

POHORELSKY, M.J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CIVIL ACTION
Index:

-------------------------------------X
UNITED STATES OF AMERICA,
<u>ex</u> <u>rel</u>
ENRICO MONTAPERTO

          Plaintiffs,


     -against-                                    **FILED IN CAMERA AND
                                                  UNDER SEAL**


NEW PARKWAY HOSPITAL, a not-
for-profit New York State Corporation;
PARKWAY HOSPITAL ACQUISITION,
INC,  a not-for-profit New York State
Corporation; NYU DOWNTOWN HOSPITAL,
a not-for-profit New York State Corporation;
OUR LADY OF MERCY MEDICAL
CENTER, a not-for-profit New York State

**Page 1 of 47**

Corporation; VICTORY MEMORIAL HOSPITAL,
a not-for-profit New York State Corporation; SAINT
VINCENT CATHOLIC MEDICAL CENTERS OF
NEW YORK, a not-for-profit New York State
Corporation; SAINT VINCENT'S MIDTOWN HOSPITAL,
a not-for-profit New York State Corporation;
SAINT JOSEPH'S MEDICAL CENTER,
a not-for-profit New York State Corporation;
SAINT CHARLES HOSPITAL and REHABILITATION
CENTER, a not-for-profit New York State
Corporation; EASTERN LONG ISLAND HOSPITAL
FOUNDATION, a not-for-profit New York State
Corporation; LONG BEACH MEDICAL CENTER,
a not-for-profit New York State Corporation;
COLUMBIA MEMORIAL PHYSICIANS HOSPITAL
ORGANIZATION INC.,a not-for-profit New York
State Corporation; BENEDICTINE HOSPITAL,
a not-for-profit New York State Corporation;
HIGHLAND HOSPITAL, a not-for-profit
New York State Corporation; THE MOUNT VERNON
HOSPITAL, a not-for-profit New York State Corporation;
BARNERT HOSPITAL, a not-for-profit
New Jersey State Corporation; PALISADES
MEDICAL CENTER, a not-for-profit New Jersey
State Corporation; TRINITAS HOSPITAL;
a not-for-profit New Jersey State Corporation;
MUHLENBERG REGIONAL MEDICAL CENTER,
a not-for-profit New Jersey State Corporation;
MARYLAND GENERAL HOSPITAL, a not-for-
profit Maryland State Corporation; NORTH BAY
HOSPITAL, a not-for-profit Texas State Corporation;
GUADALUPE VALLEY HOSPITAL, a not-for-profit
Texas State Corporation; OSTEOPATHIC MEDICAL
CENTER OF TEXAS, a not-for-profit Texas State
Corporation; MEMORIAL HERMANN BAPTIST
BEAUMONT HOSPITAL, a not-for-profit Texas
State Corporation; RIVERSIDE GENERAL HOSPITAL,

a not-for-profit Texas State Corporation; MEDICAL
CENTER HOSPITAL, a not-for-profit Texas State
Corporation; DOLLY VINSANT MEMORIAL
HOSPITAL, a not-for-profit Texas State
Corporation; HARTSELLE MEDICAL CENTER,
a not-for-profit Alabama State Corporation;
PROVIDENCE HOSPITAL, a not-for-profit
Alabama State Corporation; COLUMBIA SAINT
MARY'S HOSPITAL, a not-for-profit Wisconsin
State Corporation; SAINT CATHERINE
HOSPITAL, a not-for-profit Indiana State
Corporation; INTEGRIS-CANADIAN VALLEY
REGIONAL HOSPITAL, a not-for-profit Oklahoma
State Corporation; SAINT ELIZABETH HOSPITAL,
a not-for-profit Illinois State Corporation; SAINT MARY
OF NAZARETH, a not-for-profit Illinois State Corporation;
PROVENCIA ST MARY'S HOSPITAL, a not-for-profit Illinois
State Corporation; THOREK HOSPITAL, a not-for-
profit Illinois State Corporation;  TOUCHETTE
REGIONAL HOSPITAL,  a not-for-profit
Illinois State Corporation; JACKSON PARK HOSPITAL,
a not-for-profit Illinois State Corporation;
ACCESS HEALTH MANAGEMENT SERVICES,
INC.,  a for-profit New York State Corporation;
SPECIALCARE HOSPITAL MANAGEMENT
CORPORATION, a for-profit Missouri Corporation,
authorized to do business in New York State;
ROBERT MCNUTT; THOMAS P MILLEA; and
WILLIAM A BILLINGS;  individually;  "JOHN
DOE HOSPITALS 1-50, whose names are
 presently unknown; "JOHN DOE REHABILITATION
CENTERS"  "50-100" and "JOHN or JANE DOE  Nos.
 "100 -150" and JOHN DOEs "150-175", inclusive who
are presently unknown; the names of the last 175 defendants
 being fictitious, the true names of Defendants
being unknown to Plaintiffs, because their names and/or
capacities and/or facts showing them liable are not known

**Page 3 of  47**

presently;

         **Defendants.**    :

-----------------------------------------X

## <u>COMPLAINT FOR DAMAGES AND OTHER RELIEF<br>UNDER FALSE CLAIMS ACT</u>

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising out of false claims presented by Defendants under the Federal Medicare/Medicaid Programs. This action arises under the provisions of Title 31 U.S.C. § 3729, <u>et seq.</u>, also known as the False Claims Act, which provides that the United States District Courts shall have exclusive jurisdiction over actions brought under said Act.

2. Section 3732(a) of the aforesaid Act provides that "Any action under §3730 may be brought in any judicial district in which the Defendant or, in the case of multiple Defendants, any one Defendant can be found, resides or transacts business, or in which any act proscribed by §3729 occurred." Many Defendants herein transact their business enterprises in the Greater New York Area and in New York State, and within this judicial district.

3. Under the Act, this complaint is to be filed <u>in camera</u> and remain <u>under seal</u> for a period of at least sixty (60) days and shall be not be served on the Defendants until the Honorable Court so orders. After the Government receives

both the Complaint and relevant disclosure material, it may elect to intervene and proceed with the action within sixty (60) days, or request an extension of time in order to further investigate.

## PARTIES TO THE ACTION

4. Qui Tam Plaintiff, ENRICO MONTAPERTO ("the RELATOR") is a citizen and resident of the State of New York, and otherwise sui juris, and brings this action on behalf of the United States of America.

5. As required under the False Claims Act, 31 U.S.C. § 3730(a)(2), the Relator has provided to the Attorney General of the United States and to the United States Attorney for the Eastern District of New York, simultaneously with the filing of this Complaint, a statement of all material evidence and other information related to the Complaint. This disclosure statement supports the existence of false charges and false claims by the Defendants.

6. From about January, 2005 until the present, Relator, ENRICO MONTAPERTO, was employed by Defendants, ACCESS HEALTH MANAGEMENT SERVICES, INC. ("ACCESS"), and NEW PARKWAY HOSPITAL at its medical facility at 70-35 113th Street, Forest Hills, New York 11375.   ENRICO MONTAPERTO, worked in the capacity of intake and

discharge counselor and subsequently as a social service associate, in the NEW PARKWAY HOSPITAL . ENRICO MONTAPERTO, acted under the control, supervision, and direction of ACCESS, and NEW PARKWAY HOSPITAL.

7. During the relevant time periods herein, Defendant ACCESS is a for profit corporation, created and existing under the laws of the State of New York, operating, maintaining, staffing, managing, and controlling a hospital facility known as NEW PARKWAY HOSPITAL (f/k/a PARKWAY HOSPITAL) ("PARKWAY") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling, in conjunction with SPECIALCARE HOSPITAL MANAGEMENT CORP. ("SPECIALCARE"), and/or as a successor to, and/or individually, the Emergency Medical/Surgical Detoxification Service and Stabilization Unit ("EM/SDS") at 70-35 113th Street, Forest Hill, New York 11375.

8. During the relevant time periods herein, Defendant SPECIALCARE is a for profit corporation, created and existing under the laws of the State of Missouri, and authorized to do business in the State of New York among other places, and all times material hereto staffed a national management behavioral health care firm. At all times hereto, SPECIALCARE operates, staffs, manages and controls the NEW VISION PROGRAM ("NEW VISION").

**Page 6 of 47**

9. During the relevant time periods herein, the Defendants, PARKWAY HOSPITAL, NEW PARKWAY HOSPITAL, and PARKWAY HOSPITAL ACQUISITION ("PARKWAY") are nonprofit corporations, created and existing under the laws of the State of New York, operating, maintaining, staffing, managing, and controlling a hospital facility known as NEW PARKWAY HOSPITAL (f/k/a PARKWAY HOSPITAL)  for the care of sick and ailing persons, and, more specifically,  operating, maintaining, staffing, managing, and controlling the EM/SDS, at  70-35 113th Street, Forest Hills, New York 11375,  in conjunction with SPECIALCARE, or ACCESS, or as a successor thereto, and/or individually.

10.  During  the  relevant  time  periods  herein,  the  Defendant,  NYU DOWNTOWN HOSPITAL,  is  a  nonprofit  corporation,  created  and  existing under  the  laws  of  the  State  of  New  York,  operating,  maintaining,  staffing, managing,  and  controlling  a  hospital  facility  known  as  NYU  DOWNTOWN HOSPITAL ("NYU DOWNTOWN ") for the care of sick and ailing persons, and, more specifically,  operating, maintaining, staffing, managing, and controlling the EM/SDS, at 170 Williams Street, New York, New York, 10038, in conjunction with SPECIALCARE,  or as a successor thereto, and/or individually.

11. During the relevant time periods herein, the Defendant, OUR LADY OF

MERCY MEDICAL CENTER, is a nonprofit corporation, created and existing under the laws of the State of New York, operating, maintaining, staffing, managing, and controlling a hospital facility known as OUR LADY OF MERCY MEDICAL CENTER ("OUR LADY OF MERCY") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 600 East 23rd Street, Bronx,  New York 10466, in conjunction with SPECIALCARE  or  as  a  successor  thereto,  and/or individually.

12. During the relevant time periods herein, the Defendant, VICTORY MEMORIAL HOSPITAL,  is a nonprofit corporation, created and existing under the laws of the State of New York, operating, maintaining, staffing, managing, and controlling a hospital facility known as VICTORY MEMORIAL HOSPITAL ("VICTORY MEMORIAL") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at  699 92nd Street, Brooklyn , New York 11228, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

13. During the relevant time periods herein, the Defendant, SAINT VINCENT CATHOLIC MEDICAL CENTERS OF NEW YORK, is a nonprofit corporation, created and existing  under the laws of the State of New York,

operating, maintaining, staffing, managing, and controlling a hospital facility known as MARY IMMACULATE HOSPITAL ("MARY IMMACULATE") for the care of sick and ailing persons, and, more specifically,  operating, maintaining, staffing, managing, and controlling the EM/SDS, at 152-11 89th Ave, Jamaica,  NY 11432, in conjunction with SPECIALCARE or as a successor thereto, and or individually.

14. During the relevant time periods herein, the Defendant, SAINT VINCENT CATHOLIC MEDICAL CENTERS OF NEW YORK, is a nonprofit corporation, created and existing  under the laws of the State of New York, operating, maintaining, staffing, managing, and controlling a hospital facility known as ST MARY'S HOSPITAL BROOKLYN ("ST MARY'S BROOKLYN") and ST CLAIRE'S HOSPITAL ("ST. CLAIRE") for the care of sick and ailing persons, and, more specifically,  operating, maintaining, staffing, managing, and controlling the EM/SDS, ST MARY'S  BROOKLYN at  170 Buffalo Avenue, Brooklyn New York 11213, and ST. CLAIRE, 415 West 51 St, New York, New York, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

15. During the relevant time periods herein, the Defendant, SAINT VINCENT'S MIDTOWN HOSPITAL,  is a nonprofit corporation, created and

existing under the laws of the State of New York, operating, maintaining, staffing, managing, and controlling a hospital facility known as SAINT VINCENT'S MIDTOWN HOSPITAL ("ST. VINCENT'S MIDTOWN") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 415 w. 51ST Street, New York, N.Y. 10019, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

16. During the relevant time periods herein, the Defendant, SAINT JOSEPH'S MEDICAL CENTER, is a nonprofit corporation, created and existing under the laws of the State of New York, operating, maintaining, staffing, managing, and controlling a hospital facility known as SAINT JOSEPH'S MEDICAL CENTER ("ST. JOSEPH'S") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 127 South Broadway, Yonkers, New York 10701, in conjunction with SPECIALCARE or as a successor to, individually.

17. During the relevant time periods herein, the Defendant, SAINT CHARLES HOSPITAL AND REHABILITATION CENTER, is a nonprofit corporation, created and existing under the laws of the State of New York, operating, maintaining, staffing, managing, and controlling a hospital facility

Page 10 of 47

known as SAINT CHARLES HOSPITAL AND REHABILITATION CENTER

("ST. CHARLES") for the care of sick and ailing persons, and, more specifically,

operating, maintaining, staffing, managing, and controlling  the EM/SDS, at 200

Belle  Terre  Road,  Port  Jefferson,  N.Y.  11777,   in  conjunction  with

SPECIALCARE or as a successor thereto, and/or individually.

18. During  the  relevant  time  periods  herein,  the  Defendant,  EASTERN

LONG ISLAND HOSPITAL FOUNDATION, is a nonprofit corporation, created

and existing  under the laws of the State of New York, operating, maintaining,

staffing,  managing,  and  controlling  a  hospital  facility  known  as  EASTERN

LONG HOSPITAL OF GREENPORT NY  ("EASTERN LONG ISLAND") for

the care of sick and ailing persons, and, more specifically, operating, maintaining,

staffing, managing, and controlling the EM/SDS, at 201 Manor Place, Greenport,

New York 11944,  in conjunction with SPECIALCARE or as a successor thereto,

and/or individually.

19. During the relevant time periods herein, the Defendant, LONG BEACH

MEDICAL CENTER,  is a nonprofit corporation, created and existing  under the

laws of the State of New York, operating, maintaining, staffing, managing, and

controlling  a  hospital  facility  known  as  LONG  BEACH  MEDICAL  CENTER

("LONG BEACH") for the care of sick and ailing persons, and, more specifically,

operating, maintaining, staffing, managing, and controlling the EM/SDS, at 455 East Bay Drive, Long Beach, N.Y. 11561 in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

20. During the relevant time periods herein, the Defendant, COLUMBIA MEMORIAL PHYSICIANS HOSPITAL ORGANIZATION INC., is a nonprofit corporation, created and existing under the laws of the State of New York, operating, maintaining, staffing, managing, and controlling a hospital facility known as COLUMBIA MEMORIAL PHYSICIANS HOSPITAL ORGANIZATION INC ("COLUMBIA MEDICAL") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 71 Prospect Ave, Hudson, N.Y. 12534, in conjunction with SPECIALCARE or as a successor thereto, and /or individually.

21. During the relevant time periods herein, the Defendant, COLUMBIA MEMORIAL PHYSICIANS HOSPITAL ORGANIZATION INC., is a nonprofit corporation, created and existing under the laws of the State of New York, operating, maintaining, staffing, managing, and controlling a hospital facility known as COLUMBIA MEMORIAL PHYSICIANS HOSPITAL ORGANIZATION INC ("COLUMBIA MEDICAL") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing,

and controlling EM/SDS, at 71 Prospect Ave, Hudson, N.Y. 12534, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

22.   During the relevant time periods herein, the Defendant, BENEDICTINE HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of New York, operating, maintaining, staffing, managing, and controlling a hospital facility known as BENEDICTINE HOSPITAL ("BENEDICTINE") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 105 Mary's Avenue Kingston, N.Y. 12401, in conjunction with SPECIALCARE or as a successor thereto, and or individually.

23. During the relevant time periods herein, the Defendant, HIGHLAND HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of New York, operating, maintaining, staffing, managing, and controlling a hospital facility known as HIGHLAND HOSPITAL ("HIGHLAND") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 1000 South Avenue, Rochester, N.Y. 14620, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

24. During the relevant time periods herein, the Defendant, MOUNT

VERNON HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of New York, operating, maintaining, staffing, managing, and controlling a hospital facility known as THE MOUNT VERNON HOSPITAL ("MOUNT VERNON") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling EM/SDS, at 12 North Seventh Ave., Mount Vernon, N.Y. 10550, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

25. During the relevant time periods herein, the Defendant, BARNERT HOSPITAL CENTER, is a nonprofit corporation, created and existing under the laws of the State of New Jersey, operating, maintaining, staffing, managing, and controlling a hospital facility known as BARNERT HOSPITAL CENTER ("BARNERT") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling EM/SDS, at 680 Broadway, Patterson, N.J. 07514, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

26. During the relevant time periods herein, the Defendant, PALISADES MEDICAL CENTER, is a nonprofit corporation, created and existing under the laws of the State of New Jersey, operating, maintaining, staffing, managing, and controlling a hospital facility known as PALISADES MEDICAL CENTER

Page 14 of 47

("PALISADES") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling EM/SDS, at 7600 River Road, North Bergen, N.J. 07047, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

27. During the relevant time periods herein, the Defendant, TRINITAS HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of New Jersey, operating, maintaining, staffing, managing, and controlling a hospital facility known as TRINITAS HOSPITAL ("TRINITAS") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 225 Williamson St Elizabeth, N.J. 07207, in conjunction with SPECIALCARE or as a successor thereto, and/or individually,

28. During the relevant time periods herein, the Defendant, MUHLENBERG REGIONAL MEDICAL CENTER, is a nonprofit corporation, created and existing under the laws of the State of New Jersey, operating, maintaining, staffing, managing, and controlling a hospital facility known as MUHLENBERG REGIONAL MEDICAL CENTER ("MUHLENBERG") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at Park Ave & Randolph Rd,

VALLEY HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of Texas, operating, maintaining, staffing, managing, and controlling a hospital facility known as GUADALUPE VALLEY HOSPITAL ("GUADALUPE VALLEY") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 1215 Court Street, Sequin, TX 78155,  in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

32.    During the relevant time periods herein, the Defendant, OSTEOPATHIC MEDICAL CENTER OF TEXAS, is a nonprofit corporation, created and existing under the laws of the State of Texas, operating, maintaining, staffing, managing, and controlling a hospital facility known as OSTEOPATHIC MEDICAL CENTER OF TEXAS ("OSTEOPATHIC") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 1000 Montgomery Street, Fort Worth, TX 76107, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

33. During the relevant time periods herein, the Defendant, MEMORIAL HERMANN BAPTIST BEAUMONT HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of Texas, operating, maintaining,

staffing, managing, and controlling a hospital facility known as MEMORIAL HERMANN BAPTIST BEAUMONT HOSPITAL ("MEMORIAL HERMANN BAPTIST") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 11th & College Street, Beaumont, TX 77701, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

34. During the relevant time periods herein, the Defendant, RIVERSIDE GENERAL HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of Texas, operating, maintaining, staffing, managing, and controlling a hospital facility known as RIVERSIDE GENERAL HOSPITAL ("RIVERSIDE") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 3204 Ennis St., Houston, TX 77004, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

35. During the relevant time periods herein, the Defendant, MEDICAL CENTER HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of Texas, operating, maintaining, staffing, managing, and controlling a hospital facility known as MEDICAL CENTER HOSPITAL ("MEDICAL CENTER") for the care of sick and ailing persons, and, more

specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 500 W. 4th Street, Odessa, TX 79761, in conjunction with SPECIALCARE or as a successor to, and/or individually.

36. During the relevant time periods herein, the Defendant, DOLLY VISANT MEMORIAL HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of Texas, operating, maintaining, staffing, managing, and controlling a hospital facility known as DOLLY VINSANT MEMORIAL HOSPITAL ("DOLLY VINSANT") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 5400 East US Highway 77, San Benito, TX , 78586, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

37. During the relevant time periods herein, the Defendant, HARTSELLE MEDICAL CENTER, is a nonprofit corporation, created and existing under the laws of the State of Alabama, operating, maintaining, staffing, managing, and controlling a hospital facility known as HARTSELLE MEDICAL CENTER ("HARSELLE") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 201 Pine Street NW, Hartselle, AL 35640, in conjunction with SPECIALCARE or as

a successor thereto, and/or individually.

38. During the relevant time periods herein, the Defendant, PROVIDENCE HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of Alabama, operating, maintaining, staffing, managing, and controlling a hospital facility known as PROVIDENCE HOSPITAL ("PROVIDENCE") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 6801 Airport Boulevard, POB 850429, Mobile, AL 36685, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

39. During the relevant time periods herein, the Defendant, COLUMBIA ST. MARY'S HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of Wisconsin, operating, maintaining, staffing, managing, and controlling a hospital facility known as COLUMBIA ST. MARY'S HOSPITAL ("COLUMBIA ST. MARY'S") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 2323 N. Lake Drive, Milwaukee, WI 53211, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

40. During the relevant time periods herein, the Defendant, SAINT CATHERINE HOSPITAL, is a nonprofit corporation, created and existing

under the laws of the State of Indiana, operating, maintaining, staffing, managing, and controlling a hospital facility known as SAINT CATHERINE HOSPITAL ("ST. CATHERINE'S") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 4321 Fir Street, East Chicago, IN 46312, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

41. During the relevant time periods herein, the Defendant, INTEGRIS CANADIAN VALLEY REGIONAL HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of Oklahoma, operating, maintaining, staffing, managing, and controlling a hospital facility known as INTEGRIS CANADIAN VALLEY REGIONAL HOSPITAL ("INTEGRIS") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 1201 Health Center Parkway, Yukon, OK 73099, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

42. During the relevant time periods herein, the Defendant, INTEGRIS CANADIAN VALLEY REGIONAL HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of Oklahoma, operating, maintaining, staffing, managing, and controlling a hospital facility known as

INTEGRIS CANADIAN VALLEY REGIONAL HOSPITAL ("INTEGRIS") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 1201 Health Center Parkway, Yukon, OK 73099, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

43. During the relevant time periods herein, the Defendant, SAINT ELIZABETH HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of Illinois, operating, maintaining, staffing, managing, and controlling a hospital facility known as SAINT ELIZABETH HOSPITAL ("ST. ELIZABETH") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 1431 North Claremont Ave, Chicago, IL 60622, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

44. During the relevant time periods herein, the Defendant, SAINT MARY OF NAZARETH HOSPITAL CENTER, is a nonprofit corporation, created and existing under the laws of the State of Illinois, operating, maintaining, staffing, managing, and controlling a hospital facility known as SAINT MARY OF NAZARETH HOSPITAL CENTER ("ST. MARY OF NAZARETH") for the care of sick and ailing persons, and, more specifically, operating, maintaining,

Page 22 of 47

staffing, managing, and controlling the EM/SDS, at 2233 West Division Street, Chicago, IL 60622, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

45. During the relevant time periods herein, the Defendant, PROVENCIA SAINT MARY'S HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of Illinois, operating, maintaining, staffing, managing, and controlling a hospital facility known as PROVENCIA SAINT MARY'S HOSPITAL ("PROVENCIA ST. MARY'S") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at500 W Court Street, Kankakee, IL 60901, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

46. During the relevant time periods herein, the Defendant, THOREK HOSPITAL AND MEDICAL CENTER, is a nonprofit corporation, created and existing under the laws of the State of Illinois, operating, maintaining, staffing, managing, and controlling a hospital facility known as THOREK HOSPITAL AND MEDICAL CENTER ("THOREK") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 850 W Irving Chicago, IL, in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

47. During the relevant time periods herein, the Defendant, TOUCHETTE REGIONAL HOSPITAL,   is a nonprofit corporation, created and existing under the laws of the State of Illinois, operating, maintaining, staffing, managing, and controlling a hospital facility known as TOUCHETTE REGIONAL HOSPITAL ("TOUCHETTE") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 5900 Bond Ave. East St. Louis, IL 62207,   in conjunction with SPECIALCARE or as a successor thereto, and/or individually.

48. During the relevant time periods herein, the Defendant, JACKSON PARK HOSPITAL, is a nonprofit corporation, created and existing under the laws of the State of Illinois, operating, maintaining, staffing, managing, and controlling a hospital facility known as JACKSON PARK HOSPITAL ("JACKSON PARK") for the care of sick and ailing persons, and, more specifically, operating, maintaining, staffing, managing, and controlling the EM/SDS, at 7531 South Stony Island Avenue, Chicago, IL,   in conjunction with SPECIALCARE or as a successor thereto, and/or  individually.

49. During the relevant time periods herein, the Defendants, "JOHN DOE HOSPITALS 1-50", whose names are presently unknown; are nonprofit corporations, created and existing  under the laws of various states, operating,

maintaining, staffing, managing, and controlling  hospital facilities ("OTHER

HOSPITALS") for the care of sick and ailing persons, and, more specifically,

operating, maintaining, staffing, managing, and controlling the EM/SDS at its

location, in conjunction with SPECIALCARE or as a successor thereto,

individually.

50.  During the relevant time periods herein, the Defendants, "JOHN DOE

REHABILITATION CENTERS 50-100", whose names are presently unknown;

are either for-profit or  nonprofit corporations, created and existing  under the

laws of various states, operating, maintaining, staffing, managing, and controlling

drug rehabilitation facilities  ("REHABS") and admitting medicaid/medicare

patients as part of other Defendants' after care programs without appropriate

documentation and in violation of Medicaid/Medicare rules and or in conjunction

with   false   and   fraudulent   documentation   submitted   by   ACCESS,

SPECIALCARE and/ or other Defendants or successors thereto.

51. At all times material hereto, Defendants ROBERT MCNUTT,

THOMAS P MILLEA, and WILLIAM A BILLINGS, were residents of the State

of Missouri, otherwise sui juris, and alter-egos, moving force, Directors and

Executive Officers, and controlling owners of SPECIALCARE. All acts

performed as set out hereinafter were done in said capacity, and on behalf of the

other Defendants.  Unless otherwise indicated, these  Defendants are sued both as agents and/or employees of every other Defendant, acting within the course and scope of said agency and/or employment, with the knowledge and consent of said Co-Defendants and/or individually.

52.  Plaintiffs sue fictitious Defendants "JOHN DOE NO. 100-150" through "JOHN DOE NO. 100" inclusive, because their names and/or capacities and/or facts showing them liable are not known presently. Unless otherwise indicated, each Defendant is sued both as the agent and/or employee of every other Defendant, acting within the course and scope of said agency and/or employment, with the knowledge and consent of said Co-Defendants and/or individually.

53. At all times material hereto, "JOHN DOE 100-125"  whose names are presently unknown, were operating, maintaining, staffing, managing, and controlling referral services ("REFERRAL PERSONS") and procuring patients as part of the other Defendants' recruitment procedure programs,  without appropriate medical criteria, and in violation of medicaid/medicare  rules  in conjunction with false and fraudulent procedures of SPECIALCARE, ACCESS and or other DEFENDANT HOSPITALS or successors thereto.

## AS AND FOR THEIR FIRST CAUSE OF ACTION

54. From a period from at least October 21, 1997 until the present time, SPECIALCARE solicited and sold a management speciality services to DEFENDANT HOSPITALS (¶s 9-¶49, inclusive ) in return for fees and other remuneration.

55. The basis of SPECIALCARE'S program and sales approach was solely geared to increase hospital facility census and maximize Medicaid/Medicare billing on behalf of hospital facilities.

56. The program advanced by SPECIALCARE, entitled "THE NEW VISION PROGRAM", includes service implementation; service development; service marketing; clinical plans; policies and procedures; public information plan; referral marketing; intake and discharge planning; reimbursement analysis and chart auditing.

57. THE NEW VISION PROGRAM is characterized and presented by SPECIALCARE and DEFENDANT HOSPITALS as an inpatient emergency medical/surgical stabilization/detoxification service which treats patients with drug and alcohol and other related medical "comorbidities".

58. THE NEW VISION PROGRAM provides full-time staff and other personnel on-site at the DEFENDANT HOSPITALS to effectuate their service.

**Page 27 of 47**

59. THE NEW VISION PROGRAM ostensibly accomplishes assessments, including but not limited to authorizing admission, procuring medical history, conducting initial intake procedure with  admitting diagnosis and providing planning and placement, for aftercare in community based after-care programs and rehabilitation centers.

60. THE NEW VISION PROGRAM and SPECIALCARE, interact with DEFENDANT HOSPITALS,  receiving  a major portion of their funds from the United States Government, payable either directly from the United States Government or indirectly through the States in which they operate, under the provisions of the Federal Medicaid/Medicare Programs. The  funds and the amounts received by the Defendants are governed under regulations promulgated by state and  federal  laws , which provide for payment to hospitals caring for Medicaid/Medicare  qualified  patients. Payments are  based  upon Diagnostic Related Groupings ("DRG") for inpatients and upon hospital specific cost reports. Applicable provisions of §42 of the Code of Federal Regulations ("CFR") and other applicable Federal and State statutes provide for payments to hospitals including Defendants, based upon the classification of an inpatient admission and discharge and appropriate weighting factors that reflect the estimated relative cost of hospital resources used. The  DRG and other factor  payments for the

Page 28 of  47

average patient amount to approximately Four Thousand ($4,000.00) Dollars for each patient.

61. Upon information and belief, this packaged modality, was created by SPECIALCARE specifically to circumvent monitoring, inspections, licensure and requirements of N.Y.S. OASAS, N.Y.S. Department of Health and other similar state and federal agencies designed to regulate appropriate minimal procedures, standards, practices, reporting, medical requirements of supportive alcohol and substance abuse and/or mental health programs. One of the major reasons for such regulation is to prevent Medicaid/Medicare fraud and abuse.

62. At all times material hereto, determinations for the purpose of admission of patients to EM/SDS and the DEFENDANT HOSPITAL, inclusive of initial diagnosis, were made under the full control and auspices of SPECIALCARE, through THE NEW VISION PROGRAM, and thereafter used by DEFENDANT HOSPITALS to bill DRGs through medicaid and medicare.

63. At all times material hereto, in almost every case of admission to EM/SDS, the initial admitting assessments were conducted by non-medical personnel by completing forms initially created and provided by SPECIALCARE. Not only did said personnel have no medical training but they had no formal education, licensing or certification in the field of alcohol and

Page 29 of 47

substance abuse.

64. In point of fact, in almost every case, all of the criteria required by Medicaid/Medicare for prospective patients to meet the threshold for admission by DEFENDANT HOSPITALS, were either fabricated or routinely exaggerated, as evidenced by SPECIALCARES's own completed intake forms.

65. Upon information and belief, in some cases, subsequent medical testing and toxicology results showed patients devoid of alcohol and drugs, but the SPECIALCARE and DEFENDANT HOSPITALS continued to retain them as patient in the hospital for the sole purpose of billing the DRG to completion.

66. Upon discharge of the patient from EM/SDS, a medical doctor employed by DEFENDANT HOSPITALS certifies and attests to in writing that the principal and secondary diagnosis and the major procedures performed are accurate and complete.

67. Upon information and belief, the aforesaid medical doctor, referred to in the previous paragraph, relies upon the fraudulent documentation provided by the personnel of SPECIALCARE, and/or its successors, including but not limited to the initial diagnosis documentation created by non-medical personnel.

68. In summary, the fraudulent claims set out herein are based on all DRG billings for the fraudulently inadequately diagnosed patients. The Relator

**Page 30 of 47**

estimates that there are approximately Two Hundred One Thousand Six Hundred (201,600) incidents resulting in    fraudulent claims totaling approximately Eight Hundred Six Million Four Hundred Thousand ($806,804,000.00)Dollars. The statute provides for treble damages which would total approximately  Two billion Four Hundred Nineteen Million Two Hundred Thousand ($2,419,200,000.00) Dollars. Based on the statutory civil penalty of a minimum $5,000.00 and a maximum $10,000.00 per incident for each false claim submitted,  Relator estimates a further civil penalty award of between One Billion Eight Million  and Two Billion Sixteen Million ($1,008,000,000.00-$2,016,000,000.00) Dollars.

## AS AND FOR THEIR SECOND CAUSE OF ACTION

69. Plaintiffs repeat and re-allege each and every allegation set forth numbered and designated "1" through "68", all inclusive, as if more specifically set forth herein at length.

70. In accordance with New York and other states laws  implementing a comprehensive Medicaid Management care programs, many individuals ("RESTRICTED CLIENTS") covered by Medicaid/Medicare are restricted to a particular hospital ("RESTRICTED PROVIDERS"). This policy was created to

**Page 31 of  47**

prevent abuse by  repeaters and reduce the cost of coverage borne by Medicaid/Medicare. The laws also require and  mandate that the RESTRICTED PROVIDERS offer alcohol/substance abuse treatment and mental health services, or contract with providers of such services.

71. Upon information and belief, SPECIALCARE, DEFENDANT HOSPITALS and or their successors, do not provide access to alcohol/substance abuse treatment and other mental health service which RESTRICTED PROVIDERS not only are mandated to have but are less expensive than the EM/SDS. In the majority of DEFENDANT HOSPITALS, there are no provisions for substance abuse counseling or facilitated groups.

72. RESTRICTED CLIENTS are required to seek services for drug and alcohol issues at the specific RESTRICTED PROVIDERS that they are assigned to. Upon contact with THE NEW VISIONS PROGRAM, RESTRICTED CLIENTS are directed to the emergency rooms of the DEFENDANT HOSPITAL in order to circumvent the RESTRICTED CLIENTS plan. SPECIALCARE and DEFENDANT HOSPITALS admit most RESTRICTED CLIENTS through their emergency rooms to support their fraudulent  claim that there exists a severe medical emergency. This fraudulent claim is the prime condition precedent to an admission to any DEFENDANT HOSPITAL, i.e., a hospital other than the

**Page 32 of  47**

RESTRICTED PROVIDER, and then the subsequent billing under the DRG. As an ongoing pattern of behavior SPECIALCARE and DEFENDANT HOSPITALS knowingly and intentionally admit patients through the emergency room despite the non-existence of an emergency situation, solely for the purpose of avoiding the procedures established by medicaid/medicare to reduce costs and avoid fraud.

73. As a direct result of this fraudulent behavior, the patients, who have in many cases been in many detoxes are admitted to EM/SDS units operated by SPECIALCARE and/or its successors and DEFENDANT HOSPITALS, time and time again.

74. In summary, the fraudulent claims set out herein are based on all DRG billings for the fraudulently admitted patients and the Relator estimates that there are approximately Twenty Five Thousand (25,000) incidents resulting in fraudulent claims totaling approximately One Hundred Million ($100,000,000.00)Dollars. The statute provides for treble damages which would total approximately Three Hundred Million ($300,000,000.00) Dollars. Based on the statutory civil penalty of a minimum $5,000.00 and a maximum $10,000.00 per incident for each false claim submitted,  Relator estimates a further civil penalty award of between One Hundred Twenty Five Million and Two Hundred and Fifty Million($125,000,000.00-$250,000,000.00) Dollars.

## AS AND FOR THEIR THIRD CAUSE OF ACTION

75. Plaintiffs repeat and re-allege each and every allegation set forth numbered and designated "1" through "74", all inclusive, as if more specifically set forth herein at length.

76. Upon information and belief, from 1997 through 2004, CARLOS DEGENNARO ("DEGENNARO"), was employed by Defendant SPECIALCARE, and at all time material hereto, acted within the authority and scope of his employment and as agent of his employer, as supervisor and service coordinator of the NEW VISON PROGRAM, at several DEFENDANT HOSPITALS, including but not limited to PARKWAY, ST.CLAIRES, BARNERT, PALISADES, and MUHLENBERG.

77. During this period, acting within the authority and scope of his employment and as agent of his employer, DEGENNARO created and compiled a portfolio of stationery, which bore the letterheads of approximately twenty RESTRICTED PROVIDERS, and purported signatures of the RESTRICTED PROVIDER's authorizing agent.

78. In order for a RESTRICTED CLIENT to gain admission from a EMS/DS, as part of their aftercare program, to a substance abuse rehabilitation center, other than one located in the RESTRICTED PROVIDER, that

**Page 34 of 47**

RESTRICTED PROVIDER must as a prerequisite to such admission  give its permission in writing to lift said restriction.

79. Upon information and belief, during the relevant period, in order to circumvent this restriction, DEGENNARO directed his staff at PARKWAY to falsify  and otherwise use the above described PROVIDER LETTERS   for SPECIALCARE and its successors' RESTRICTED CLIENTS to gain admission to substance abuse rehabilitation centers, JOHN DOE REHABILITATION CENTERS 50-100, without authorization or permission of the RESTRICTED PROVIDERS,

80. The staff of SPECIALCARE and its successors implemented this procedure as directed to do so at NEW PARKWAY.

81.   Upon information and belief, JOHN DOE REHABILITATION CENTERS 50-100 admitted RESTRICTED CLIENTS using said fraudulent PROVIDER LETTERS without verification from RESTRICTED PROVIDERS.

82. In summary, the fraudulent claims set out herein are based on all DRG billings for the fraudulently admitted patients and the Relator estimates that there are approximately Five Hundred (500) incidents resulting in  fraudulent claims   totaling   approximately   Seven   Million   Five   Hundred ($7,500,000.00)Dollars. The statute provides for treble damages which would

total approximately Twenty Two Million Five Hundred Thousand ($22,500,000.00) Dollars. Based on the statutory civil penalty of a minimum $5,000.00 and a maximum $10,000.00 per incident for each false claim submitted, Relator estimates a further civil penalty award of between Two Million Five Hundred Thousand and Five Million ($2,500,000.00-$5,000,000.00) Dollars.

## AS AND FOR THEIR FOURTH CAUSE OF ACTION

83. Plaintiffs repeat and re-allege each and every allegation set forth numbered and designated "1" through "82", all inclusive, as if more specifically set forth herein at length.

84. Upon information and belief, from 1997 through present, SPECIALCARE secured individuals to recruit prospective clients, REFERRAL PERSONS.

85. In most circumstances, the REFERRAL PERSONS, solicited and produced REFERRED PATIENTS who are generally homeless, derelict, mentally and/or psychiatrically impaired, and/or otherwise in need of shelter.

86. In most instances these REFERRED PATIENTS do not have emergency stabilization needs, and in some cases they do not have any substance abuse problems.

Page 36 of 47

87. Upon information and belief, REFERRAL PERSONS are paid between $50.00 and $100.00 per referral.

88. Upon information and belief, no documentation or other medical records are provided by the REFERRAL PERSONS, indicating the need for emergency treatment.

89. Upon information and belief, REFERRAL PERSONS generally do not have any educational or other credentials to assess individuals.

90. SPECIALCARE and its successors admit REFERRED CLIENTS.

91. In many cases the same REFERRED CLIENTS are admitted time and time again.

92. In summary, the fraudulent claims set out herein are based on all DRG billings for the fraudulently admitted patients and the Relator estimates that there are approximately Sixty Thousand(60,000) incidents resulting in fraudulent claims totaling approximately Four Million Five Hundred Thousand ($4,500,000.00)Dollars. The statute provides for treble damages which would total approximately Thirteen Million Five Hundred Thousand ($13,500,000.00) Dollars. Based on the statutory civil penalty of a minimum $5,000.00 and a maximum $10,000.00 per incident for each false claim submitted, Relator estimates a further civil penalty award of between Three Hundred Million and

Page 37 of 47

Six Hundred Million($300,000,000.00-$600,000,000.00) Dollars.

## AS AND FOR THEIR FIFTH CAUSE OF ACTION

93. Plaintiffs repeat and re-allege each and every allegation set forth numbered and designated "1" through "92", all inclusive, as if more specifically set forth herein at length.

94. On or about December, 2004, PARKWAY, terminated its agreement with SPECIALCARE, which agreement had contracted for SPECIALCARE to run its NEW VISION PROGRAM at PARKWAY

95. On or about November 2004, ACCESS contracted with PARKWAY to operate, maintain, staff, and control, in conjunction with PARKWAY an EM/SDS on the premises of PARKWAY.

96. ACCESS hired several of SPECIALCARE's employees, including DEGENARRO, as the majority of its personnel to run the EM/SDU.

97. ACCESS employees were directed by ACCESS in conjunction with PARKWAY, to conduct its program in the identical manner as did SPECIALCARE's NEW VISION PROGRAM, including its procedures.

98. ACCESS conducted its initial assessments in an identical manner as did SPECIALCARE's NEW VISION PROGRAM.

99. These assessments were conducted by ACCESS by non-medical personnel, lacking required substance abuse education, licensure, and certification.

100. In almost every case, all of the necessary criteria required to meet the threshold for admission for prospective patients were either fabricated or routinely exaggerated.

101. RESTRICTED CLIENTS were directed to PARKWAY's emergency room for admission in order to circumvent said restriction.

102. Stationery bearing RESTRICTED PROVIDER's letterheads were fabricated by ACCESS's personnel for RESTRICTED CLIENTS to gain admission to aftercare substance abuse rehabilitation centers.

103. ACCESS retained the same REFERRAL PERSONS who continued the same recruitment procedures.

104. In summary, the fraudulent claims set out herein are based on all DRG billings for the fraudulently inadequately diagnosed patients and the Relator estimates that there are approximately Three Thousand (3,000) incidents resulting in fraudulent claims totaling approximately Twelve Million ($12,000,000.00)Dollars. The statute provides for treble damages which would total approximately Thirty Six Million ($36,000,000.00) Dollars. Based on the

statutory civil penalty of a minimum $5,000.00 and a maximum $10,000.00 per incident for each false claim submitted, Relator estimates a further civil penalty award of between Fifteen Million and Thirty Million($15,000,000.00-$30,000,000.00) Dollars.

## AS AND FOR THEIR SIXTH CAUSE OF ACTION

105. Plaintiffs repeat and re-allege each and every allegation set forth numbered and designated "1" through "104", all inclusive, as if more specifically set forth herein at length.

106. From a period from at least October 21, 1997, until the present time, SPECIALCARE, its successors including ACCESS, and all DEFENDANT HOSPITALS in the State of New York, received a major portion of its funds from the United States Government, payable either directly from the United States Government or indirectly through the State of New York, under the provisions of the Federal Medicaid/Medicare Programs. The funds and the amounts received by the Defendants were governed under regulations promulgated by the Health Care Financing Administration ("HCFA"), New York State Public Health Law, New York State Mental Hygiene Law, and Office of Alcoholism & Substance Abuse Services ("OASAS"), which provided for payment to hospitals

caring for Medicaid/Medicare qualified patients.

107. The ES/SDU programs were specifically and intentionally established to avoid the auspices of the N.Y.S. Department of Health and OASAS regulations

108. Provisions of the Code of Federal Regulations, 42CFR§482.11, provide that a hospital must be in compliance with all applicable Federal health and safety laws. Furthermore, under the CFR, the Defendant hospital must be licensed and approved under all applicable standards for licensing for the State of New York.

109. Although the law provides that institutions accredited as hospitals by Joint Commission on Accreditation of Healthcare Organizations ("JCAHO"). 42 CFR§488.5 are deemed to meet all of the Medicaid/Medicare conditions and standards necessary for participation by hospitals and payment under the federal regulations thereunder, the issue of substance abuse treatment brings this under the control of New York State OASAS .

110. As a requirement of maintaining appropriate licensing from New York State, pursuant to 14 NYCRR §816.6, and in order to maintain a medically managed detoxification unit which meets the New York State standards for accreditation, the Defendant hospital should have operated under and been authorized  by OASAS , under a Chemical Dependence Operating Certificate,

**Page 41 of  47**

and similar predecessor Certificates, to administer medically managed detoxification services.

111. From 1997 through the present Defendants operating in New York State, committed an intentional act of concealment from OASAS and therefore appropriate New York State and Federal governmental agencies.

112. The Defendants are constantly changing and manipulating their program to avoid detection and monitoring by the appropriate authorities.

113. In summary, the fraudulent claims set out herein are based on all DRG billings for the fraudulently inadequately diagnosed patients and the Relator estimates that there are approximately Two Hundred One Thousand Six Hundred (201,600) incidents resulting in fraudulent claims totaling approximately Eight Hundred Six Million Four Hundred Thousand ($806,804,000.00)Dollars. The statute provides for treble damages which would total approximately Two billion Four Hundred Nineteen Million Two Hundred Thousand ($2,419,200,000.00) Dollars. Based on the statutory civil penalty of a minimum $5,000.00 and a maximum $10,000.00 per incident for each false claim submitted, Relator estimates a further civil penalty award of between One Billion Eight Million and Two Billion Sixteen Million ($1,008,000,000.00-$2,016,000,000.00) Dollars.

## AS AND FOR THEIR SEVENTH CAUSE OF ACTION

114. Plaintiffs repeat and re-allege each and every allegation set forth numbered and designated "1" through "113", all inclusive, as if more specifically set forth herein at length.

115. RELATOR is further entitled to further damages under State Qui Tam Acts of the States wherein the Defendants did business, including but not limited to the States of Texas, Illinois, and Oklahoma.

WHEREFORE, Plaintiff demands judgment against the Defendants and each of them as follows:

a. That by reason of the violation of the False Claims Act as set forth in the First through Fourth Causes of action, this Court enter a judgment against the Defendants in an amount equal to three (3) times the amount of damages the United States Government has sustained because of Defendant's actions, plus a civil penalty of not less than Five Thousand ($5,000.00) Dollars and not more than Ten Thousand ($10,000.00) Dollars for each violation of 31 U.S.C. § 3729.

b. That the Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant to §3730(d) of the False Claims Act and/or any other applicable provisions of Federal or State law;

c. That the Relator be awarded all costs of this action, including attorney's

fees and court costs;

   d. That Relator be awarded appropriate relief pursuant to §3730(h) including but not limited to an injunction, enjoining and restricting Defendants from harassing and discriminating against him; and

   e. That the Plaintiff and Relator have such other relief as the Honorable Court deems just and proper.

Dated: October  20th  2005
       East Meadow, New York

                         Yours Etc.

                         _____
                         ALAN LEBENBAUM, ESQ.
                         al2774
                         Attorney for Plaintiffs
                         156 Beach 139th Street
                         Belle Harbor, New York 11694
                         Tele: (917) 826-1371
                         Fax: (718) 634-5900
                         E-mail- agl-law@earthlink.net

                         and

                         _____
                         ARNOLD SAPHIRSTEIN ESQ.
                         as8157
                         155 Bellmore Road
                         East Meadow New York 11554
                         Tele: (516) 731-6011
                         Fax: (516) 731-5212
                         E-mail: arniesap4law@aol.com

   Page 44 of  47

## VERIFICATION

STATE OF NEW YORK )
                                    ) ss.:
COUNTY OF NASSAU   )

ENRICO MONTAPERTO, being duly sworn, deposes and says:

I am the Plaintiff/Relator in the Action herein; I have read the foregoing

COMPLAINT, and I know the contents thereof and the same are true to my own

knowledge, except as to  matters therein which are stated to be alleged upon

information and belief, and as to those matters I believe them to be true.


_____
        ENRICO MONTAPERTO

Sworn to before me this
20th  day of October 2005


_____
        Notary Public

                                ALAN  GARY  LEDENBAUM
                        Notary Public, State of New York
                                No. 02LE6003294
                            Qualified in Queens County
                        Commission Expires Mar. 2, 2008

## CERTIFICATE OF MAILING

The undersigned certifies that on this 21st day of October 2005, a copy of

this Complaint was placed in priority mail, United States Mail, postage prepaid,

and addressed to :

MICHAEL HERTZ,  ESQ.
Commercial Litigation Branch/Civil Division
United States Department of Justice
601 D Street NW
Room 6540
Washington D.C. 20530

& hand delivered to:

RICHARD HAYES, ESQ.
Assistant United States Attorney
One Pierrepont Plaza
Brooklyn New York 11201

ALAN LEBENBAUM, ESQ.
al2774
Attorney for Plaintiffs
156 Beach 139th  Street
Belle Harbor, New York 11694
Tele: (917) 826-1371
Fax: (718) 634-5900
agl-law@earthlink.net

and

ARNOLD SAPHIRSTEIN ESQ.
as8157

Page 46 of  47

155 Bellmore Road
East Meadow New York 11554
Tele: (516) 731-6011
Fax: (516) 731-5212
E-mail: arniesap4law@aol.com